**SO ORDERED.**

**SIGNED this 23 day of March, 2018.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                          CASE NO. 15-05128-5-DMW

JIHAD LEWIS LIBBUS
AMY BUGGE LIBBUS                                CHAPTER 7

        DEBTORS

### ORDER DISALLOWING AND STRIKING AMENDED EXEMPTION

The matter before the court is the Trustee's Objection to Debtors' Claimed Exemptions ("Exemption Objection") filed by Chapter 7 trustee Gregory B. Crampton, Esq. ("Trustee") on November 1, 2017 and the Response thereto filed by Jihad Lewis Libbus and Amy Bugge Libbus ("Debtors") on November 15, 2017. The court conducted a hearing on February 15, 2018 in Raleigh, North Carolina. The Trustee appeared on his own behalf, and Cort I. Walker, Esq. appeared on behalf of the Debtors. At the conclusion of the hearing, the court took the matter under advisement and allowed the parties ten days to submit supporting memoranda. After review of this memoranda and consideration of the evidence and arguments of counsel presented at the hearing, the court makes the following findings of facts and conclusions of law:

## BACKGROUND

*Initial Schedules*

The Debtors filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code[1] on September 22, 2015, and the court appointed the Trustee to administer the estate pursuant to § 704. On September 30, 2015, the Debtors filed statements and schedules required by § 521(a), including the following:

1) Schedule A – Real Property, indicating that the Debtors owned no real property at the time of their petition;

2) Schedule C-1 – Property Claimed as Exempt, pursuant to which the Debtors claimed, *inter alia*, the following exemptions under North Carolina law:[2]

   a) Wildcard exemptions pursuant to N.C. Gen. Stat. § 1C-1601(a)(2)[3] totaling $10,000.00 in jointly owned property:

      i) a 51% interest in Libbus Enterprise Corporation, valued at $8,784.62; and

      ii) $1,215.38 of the $3,672.92 balance in their Capital Bank checking account; and

   b) Exemptions pursuant to N.C. Gen. Stat. § 1C-1601(a)(6) in two life insurance policies with respective cash values of $595,709.00 and $894,155.00; and

---

[1] With the exception of formal citations, references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, shall be by section number only.

[2] In this district, a debtor is required to claim any exemptions under North Carolina law, because pursuant to N.C. Gen. Stat. 1C-1601(f), North Carolina is an "opt out" state under § 522(b). *In re Connor*, 419 B.R. 304, 306 (Bankr. E.D.N.C. 2009). *See also In re Cain*, 235 B.R. 812, 815 (Bankr. M.D.N.C. 1998) (holding that because North Carolina has opted out of the exemptions provided under § 522(d), the exemptions available for bankruptcy debtors in North Carolina depend upon the law of North Carolina).

[3] Pursuant to N.C. Gen. Stat. § 1C-1601(a)(2), the debtor can apply any unused amount of the homestead exemption up to $5,000.00 to claim a "wildcard exemption" in any property. The Debtors, disclosing no ownership of real property, did not claim a homestead exemption under N.C. Gen. Stat. § 1C-1601(a)(1); therefore, they were each entitled to claim the maximum wildcard exemption of $5,000.00.

3) Schedule F – Creditors Holding Unsecured Nonpriority Claims, in which the Debtors listed a judgment debt of the male Debtor and in favor of Branch Banking & Trust Company ("BB&T") for the amount of $574,057.48.

The Debtors' schedules included a Declaration Concerning Debtor's Schedules: Declaration Under Penalty of Perjury pursuant to which each of the Debtors attested that "I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of 24 sheets, and that they are true and correct to the best of my knowledge, information, and belief."[4]

The Debtors received a discharge pursuant to § 727 on December 30, 2015. The Trustee did not object to any of the Debtors' claimed exemptions and filed a Report of No Distribution on January 24, 2017. On February 16, 2017, the court entered a Final Decree and closed the case.

*Amended Schedules*

On August 28, 2017, the Debtors filed a Motion to Reopen Case, requesting the court to reopen their case so that they could move for avoidance of a judicial lien created by BB&T's judgment which encumbered the male Debtor's one-half interest in real property ("Yates Store Road Property") owned jointly as tenants-in-common with Glenn Futrell ("Mr. Futrell") and located at 0 Yates Store Road, Cary, North Carolina. The Trustee filed a Response to this motion, noting that the Debtors listed no real property in their schedules and claimed no exemption relating to any ownership in real property. On September 27, 2017, the court entered an Order Reopening Case.

---

[4] Although the five pages of Schedule C-1 were included as part of the 24 pages of schedules, a similar declaration signed by the Debtors was contained within Schedule C-1 that provides that "[w]e, Jihad Lewis Libbus and Amy Bugge Libbus, declare under penalty of perjury that I have read the foregoing Schedule C-1 – Property Claimed as Exempt, consisting of 5 sheets, and that they are true and correct to the best of my knowledge, information, and belief."

3

On October 2, 2107, the Debtors filed amended schedules and statements as follows:

1) Amended Schedule A/B: Property lists the Yates Store Road Property as having a value of $10,000.00, with the male Debtor's one-half tenant in common interest valued at $5,000.00; and

2) Amended Schedule C-1 – Property Claimed as Exempt altered the Debtors' $10,000.00 of wildcard exemptions under N.C. Gen. Stat. § 1C-1601(a)(2) to the following:

   a) The male Debtor's $5,000.00 interest in the Yates Store Road Property; and

   b) $5,000.00 of the Debtors' jointly owned 51% interest in Libbus Enterprise Corporation, valued at $8784.62;[5] and

3) Amended Schedule D: Creditors Who Have Claims Secured by Property lists the judgment in favor of BB&T as a debt secured by the Yates Store Road Property, with this debt being removed from Amended Schedule F.

*Lien Avoidance Motion*

Also on October 2, 2017, the Debtors filed a Motion to Avoid Judicial Lien of Branch Banking & Trust Company ("Avoidance Motion"), requesting the court to avoid BB&T's judicial lien encumbering the Yates Store Road Property pursuant to § 522(f), as impairing the male Debtor's wildcard exemption. On October 16, 2017, the Trustee filed a Limited Objection to Motion to Avoid Judicial Lien and requested that the court not consider the Avoidance Motion until and unless the Debtors' amended exemptions are allowed. The Trustee also noted that the tax value for the Yates Store Road Property is $115,760.00 and requested that the court require the Debtors to present evidence supporting the significantly lower value of $10,000.00 asserted in

---

[5] The court notes that with the male Debtor claiming all of his $5,000.00 wildcard exemption in the Yates Store Road Property, only the female Debtor can claim a wildcard exemption in the corporation, and her one-half interest of their joint ownership interest is $4,392.31 which is less than the $5,000.00 claimed.

their amended schedules and in the Avoidance Motion.  Thereafter, on November 1, 2017, the Trustee filed the Exemption Objection, requesting the court to deny the male Debtor's claimed wildcard exemption in the Yates Store Property.[6]

*Testimony*

The Exemption Objection and the Avoidance Motion were scheduled jointly for hearing, and the male Debtor testified about his ownership of the Yates Store Road Property, the value of this property, and his failure to disclose initially his property interest.  The male Debtor testified that in the early 2000's, he and Mr. Futrell were partners individually and through limited liability companies in the development of the area where the Yates Store Road Property is located. Through the course of this development, many property deeds were executed, and they often owned properties as tenants-in-common to take advantage of the tax-free exchange allowed by 26 U.S.C. § 1031.  The Yates Store Road Property was transferred by Mr. Futrell to himself and the male Debtor as tenants-in-common in November, 2002.  The male Debtor testified that his relationship with Mr. Futrell soured around 2009 after the real estate recession, and he forgot that he had an ownership interest in the Yates Store Road Property.  He said that a Wake County property records search performed around the time of his bankruptcy petition did not disclose him as an owner of the Yates Store Road Property.

The male Debtor went on to testify that Mr. Futrell contacted him in 2016 to rekindle their friendship.  The male Debtor at that time indicated to Mr. Futrell that he believed that he was entitled to half of the Yates Store Road Property, and Mr. Futrell agreed to sell him the entire property for $10,000.00.  The male Debtor says that he later executed a written offer to purchase and his real estate attorney discovered that he already owned half of the Yates Store Road Property,

---

[6] The Trustee also objected to the Debtors' continued claimed exemption in life insurance policies; however, the Trustee withdrew orally this portion of the Exemption Objection at the hearing.

5

and that it was encumbered by BB&T's judicial lien.  The Debtors then consulted their bankruptcy counsel for the purpose of reopening their case to claim an exemption in the Yates Store Road Property and avoid BB&T's judicial lien as impairing that exemption.  Shortly before the case was reopened, on August 29, 2017, Mr. Futrell transferred the Yates Store Road Property to the male Debtor as sole owner in fee simple for $10,000.00.

*Trustee's Position*

The Trustee argued that the male Debtor's amended wildcard exemption in the Yates Store Road Property should be denied, arguing that when the case was closed, the Debtors lost their ability to amend their exemptions as a matter of course under Rule 1009(a) of the Federal Rules of Bankruptcy Procedure.[7]  The court took the Trustee's Exemption Objection under advisement and denied without prejudice the Avoidance Motion.  In an Order Denying Motion to Avoid Judicial Lien entered on February 16, 2018, the court explained that the Debtors had not met their burden of proof under § 522(f), and any avoidance of BB&T's judicial lien is premature pending resolution of the Exemption Objection.

## DISCUSSION

*Jurisdiction*

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1). *See In re Horstman*, 276 B.R. 80, 81 (Bankr. E.D.N.C. 2002) (finding that an objection to a debtor's wildcard exemption was a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B)). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

---

[7] Except for formal citations, subsequent references to the Federal Rules of Bankruptcy Procedure will be by rule number only.

*Rules 4003, 1009 and 9006*

Rule 4003 establishes the procedure for scheduling, and objecting to, property that an individual debtor intends to claim as exempt; however, Rule 1009(a) governs a debtor's right to amend a schedule of claimed exemptions. *In re Poulette*, 493 B.R. 729, 733 (Bankr. D. Md. 2013). Specifically, Rule 1009(a) provides that "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course *at any time before the case is closed*." Fed. R. Bankr. P. 1009(a) (emphasis added).

In *Poulette*, the court followed a case relied upon by the Trustee in holding that "Rule 1009(a)'s plain language terminates a debtor's liberal right to amend exemptions once the case is closed." *Poulette*, 493 at 733 (citing *In re Wilmoth*, 412 B.R. 791, 796 (Bankr. E.D. Va. 2009)). This court also followed *Wilmoth* to conclude that "[r]eopening a case does not revive the debtor's absolute right to amend the schedules." *In re Dunn*, No. 05-09708-8-JRL, 2010 WL 2721201, at *2 (Bankr. E.D.N.C. July 7, 2010) (citing *Wilmoth*, 412 B.R. at 795)). The established precedent of this district and others within the jurisdiction of the United States Court of Appeals for the Fourth Circuit dictate that the Debtors do not have an unqualified right to amend their schedules in this reopened case; however, the court may nonetheless allow an amendment if "the failure to act before the case closed resulted from excusable neglect." *Id.* (citing Fed. R. Bankr. P. 9006(b)(1)). Rule 9006(b)(1) provides the court discretion to enlarge a period of time within which an act is required or allowed, upon motion made after the expiration of such time period, "where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1).

*Excusable Neglect Test*

The Fourth Circuit relies upon the two-prong test established by the United States Supreme Court in *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S. Ct. 1489, 123

L. Ed.2d 74 (1993) for determining whether excusable neglect has been shown. *Dunn*, 2010 WL 2721201, at *2 (citing *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 533 (4th Cir. 1996)). This court explained previously that—

> [t]o satisfy the first prong of the test, the omission must result from neglect; the second prong requires that the neglect be "excusable." Neglect is defined with reference to Webster's Dictionary as "to leave undone or unattended to especially through carelessness," and includes situations where a party misses a deadline through "inadvertence, miscalculation, or negligence." In finding that neglect is "excusable" the court must make an equitable determination taking into account the totality of the circumstances, including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was in the reasonable control of the movant, and whether the movant acted in good faith." This "elastic concept" does not require rigid application of these factors, nor does it render determinative whether the error was caused by circumstances outside the party's control.

*Id.* (quoting *Pioneer*, 507 U.S. at 388, 395, 113 S. Ct. at 1494, 1498, 123 L. Ed.2d 74) (other citations omitted).

In *Wilmoth*, while his Chapter 7 case was still open, the debtor filed in state court a personal injury action based upon injuries resulting from a pre-petition automobile accident. *Wilmoth*, 412 B.R. at 794. The debtor advised his bankruptcy counsel of the automobile accident and scheduled associated medical expenses, but he did not schedule the personal injury cause of action as personal property or as exempt. *Id.* at 794, 798. A year after the bankruptcy case was closed, it was reopened upon motion of the debtor, and the debtor then filed amended schedules to disclose and exempt the personal injury cause of action. *Id.* at 794. The court found that the length of delay and impact on efficient administration of the case weighed heavily against the debtor, and the debtor had not provided an excusable reason as to why the cause of action was not listed while the case was open. *Id.* at 798. The court declined to consider whether the omission was the result of bad faith but concluded "that the inadvertence or carelessness to list the Cause of Action as an asset and to claim it as exempt is not excusable." *Id.* at 800.

8

The Debtors in this case attempt to distinguish *Wilmoth* as involving property of the estate that was known by the debtor during the pendency of his case, whereas the male Debtor testified that he was unaware of his ownership interest in the Yates Store Road Property when the petition was filed and did not learn of it until after the case closed. The male Debtor's testimony is less than credible, but assuming that he had forgotten about his interest in the Yates Store Road Property, the Debtors' obligation to ensure a full disclosure of this real property interest is an absolute necessity under the jurisdiction of this court. The Debtors knew or should have known their interests in real estate when they signed their schedules under penalty of perjury.

One of the primary purposes of the Bankruptcy Code is to provide the honest debtor with a "fresh start," which in the case of an individual debtor is given through a discharge. In exchange for this relief, the debtor is required by § 521 to file disclosures with the court, at the top of the list being "a schedule of assets and liabilities." 11 U.S.C. § 521(a)(1)(B)(i). As eloquently stated by the United States Bankruptcy Court for the District of North Dakota—

> [i]t is a "fundamental necessity in bankruptcy" that the information which debtors provided in their petition, Schedules, and Statement of Financial Affairs be accurate, thorough, and reliable. In this respect, "[a] debtor has an uncompromising duty to disclose whatever ownership he holds in property." The importance of these pronouncements cannot be understated; the bankruptcy system as a whole, and each particular case which forms a component part of it, cannot function without the honest and forthcoming efforts of its debtors. Absent this, the process, and the foundation laid in preparation for a debtor's "fresh start," are destroyed.

*Kaler v. McLaren (In re McLaren)*, 236 B.R. 882, 894 (Bankr. D.N.D. 1999) (quoting *Armstrong v. Lunday (In re Lunday)*, 100 B.R. 502, 507-08 (Bankr. D.N.D. 1989)) (other citations omitted).

*No Excusable Neglect*

The first category of assets to be disclosed in Schedule A/B is real property, emphasizing the importance of what is often a debtor's most valuable asset. While the court can understand a debtor forgetting about a common item of personal property, perhaps a piece of jewelry or

9

collectible, acquisition of real property is significant and memorable. The male Debtor testified that through his business relationship with Mr. Futrell, they frequently bought and sold properties, so perhaps acquiring the Yates Store Road Property itself would not specifically come to mind, but the nature of their business dealings triggered a heightened duty for the Debtors to make a diligent inquiry into any remaining real estate holdings. The male Debtor offered the excuse that the Wake County property records did not reflect his ownership interest, but those public records are not a substitute for his personal knowledge and record of his real property assets. The Debtors did not offer any evidence supporting the claim that the Wake County property records were inaccurate, and the court notes that the real estate attorney apparently had no trouble discovering the male Debtor's ownership interest in the Yates Store Road Property.

The court is also troubled by the timing of events and is suspect of the Debtors' motives. The male Debtor stated more than once during his testimony that he began discussions with Mr. Futrell about obtaining ownership of the Yates Store Road Property in 2016, yet the bankruptcy case did not close until February 16, 2017. This indicates that even if the male Debtor had initially forgotten about his ownership interest, he had ample time to discover, disclose, and claim an exemption in this interest while his Chapter 7 case was still open. The male Debtor indicated that he desired to obtain ownership of the Yates Store Road Property from Mr. Futrell but at the same time described it as a worthless piece of property, an opinion that is contradicted by the tax value. The court wonders if perhaps the purchase was postponed purposefully until after the bankruptcy case was closed, and the subsequent discovery of an existing ownership interest and encumbrance by BB&T's judicial lien necessitated the case being reopened to seek avoidance of that judicial lien. Like in *Wilmoth*, the court will stop short of considering whether the Debtors are proceeding in bad faith but finds that the length of delay in disclosure and its impact on an efficient

administration weigh heavily against finding their neglect with respect to the Yates Store Road Property excusable under Rule 9006(b)(1); now therefore,

It is ORDERED, ADJUDGED, AND DECREED as follows:

1. The Trustee's Exemption Objection be, and hereby is, sustained; and

2. The male Debtor's claimed wildcard exemption in the Yates Store Road Property as set forth in the Debtors' Amended Schedule C-1 be, and hereby is, denied and stricken from the record.

**END OF DOCUMENT**